IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **FRAY COLEMAN** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 23-425-MAK** |
| | : | |
| **CITY OF WILMINGTON** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                 September 11, 2023

     A police department fired a long-serving Black sergeant after an internal investigation into the sergeant's responses to inquiries regarding a murder investigation. She now sues her City employer, its Office of Public Safety, and Police Department for violating her civil rights by depriving her of the benefits of contracts due to race and by using information gained from her cell phone under a judicially approved search warrant as part of an older murder investigation. The City and its administrative bodies move to dismiss or for summary judgment. We must dismiss her claims as she cannot sue public entities for racial discrimination in connection with contracts and she pleads no basis to vacate the judicially approved search warrant allegedly obtaining information used in the investigation before terminating her. And she cannot sue the Office of Public Safety or Police Department for these claims as they are not separate from the City under the civil rights laws. But she may be able to plead other claims against the City or individual state actors. We grant her leave to timely amend if she can state claims within our limited jurisdiction in good faith.

### I.    Alleged facts.

     Fray Coleman worked for the City of Wilmington in its Police Department beginning in June 1999. The City fired her on January 3, 2023 shortly after an internal investigation.[1]

The firing allegedly arises from an investigation into a murder over fifteen years ago. Police officers interviewed Ms. Coleman in 2007 related to the then-recent murder of her daughter's biological father's friend.[2] Ms. Coleman then told the police officers it would not surprise her if someone killed a murder suspect named Ramadan because of Ramadan's connection to the murder.[3] Someone later murdered Ramadan in February 2008.[4] City detectives then questioned Ms. Coleman about Ramadan's murder in early 2008.[5] Ms. Coleman told the detectives she had no information about Ramadan's murder.[6]

The City renewed looking into this cold case last year. It hired a retired state trooper to twice interview Ms. Coleman about the 2008 Ramadan murder in 2022.[7] The state trooper told Ms. Coleman she had an inconsistent recollection of the murder after the second interview.[8] The state trooper applied for a search warrant to search Ms. Coleman's cell phone on December 7, 2022.[9] The search warrant covered the time between Ms. Coleman's first and second interviews in 2022[10] Judge LeGrow approved the warrant.[11]

A Delaware Department of Justice employee executed the search warrant for Ms. Coleman's cell phone on December 8, 2022.[12] The City thereafter placed her on Administrative Duty and prevented her from leaving the police building.[13] Wilmington police officers later discussed Ms. Coleman's personal information and pictures on her cell phone created outside the warrant's date range.[14]

The City fired Ms. Coleman on January 3, 2023.[15]

II.  Analysis

Ms. Coleman sued the City, its Office of Public Safety, and its Police Department under the civil rights laws arising from her January 3, 2023 termination. Ms. Coleman alleges the City violated federal civil rights law confirmed in section 1981 by treating Ms. Coleman and other

Black officers differently than white officers in the terms of their employment. She alleges the Police Department fired her because the City, Office of Public Safety, and the Police Department engage in a policy of racial discrimination against Black officers.[16]

Ms. Coleman also alleges the City violated her Fourth and Fourteenth Amendment rights under section 1983 by executing on a racially-motivated search warrant. Ms. Coleman alleges the City, Office of Public Safety, and the Police Department conducted an unreasonable search by obtaining personal information and pictures from her cell phone beyond the search warrant's scope.[17] Ms. Coleman alleges the City has a practice of allowing its forensic examiners to download the entire contents of cell phones subject to a search warrant and give the extracted contents to the warrant's author.[18] Ms. Coleman alleges this practice allows the warrant's author to conduct a "fishing expedition" to review data outside the warrant's scope.[19] Ms. Coleman alleges detectives "routinely" review the information extracted from a cell phone and attempt to tie any "damning evidence" taken outside the warrant's date range to data found within the warrant's range.[20] Ms. Coleman does not allege something wrong with the warrant procedure as approved by Judge LeGrow; she instead alleges the City only sought the warrant because of her race.[21] She alleges this racial motivation stems from "long-standing racial problems" within the City's internal investigative practices.[22]

Ms. Coleman seemingly pins her improper termination on the practices of Inspector Cecilia Ashe.[23] Ms. Coleman alleges Inspector Ashe's Police Department "has a long history of discrimination against Black officers."[24] Ms. Coleman alleges twenty-four separate instances of racial discrimination within the Police Department.[25] Ms. Coleman's allegations of racial discrimination include disparate disciplinary treatment of white and Black officers, promoting less qualified white officers over more qualified Black officers, and retaliation against

3

complaining Black officers.[26] Ms. Coleman alleges this history of discrimination is part of a broader "pattern and practice" of discrimination in the Police Department.[27] But Ms. Coleman needs to tie this alleged pattern and practice to the City's decision to fire her after its investigation.

The City moves to dismiss Ms. Coleman's section 1981 claim and moves for summary judgment on her section 1983 claim. The City argues Ms. Coleman cannot sue the Office of Public Safety and the Police Department as they are not juridical entities.[28] The City argues Ms. Coleman fails to allege the City executed an invalid search warrant.[29]

We dismiss Ms. Coleman's section 1981 claim with prejudice as Ms. Coleman cannot sue state actors under section 1981. We dismiss her claims against the Office of Public Safety and the Police Department with prejudice. We dismiss Ms. Coleman's section 1983 claims because Ms. Coleman fails to allege facts allowing her to challenge the warrant's validity. We dismiss with leave for Ms. Coleman to timely amend her complaint if she can plead claims relating to alleged discrimination consistent with the facts and Rule 11.

### A. We dismiss Ms. Coleman's claims against the Office of Public Safety and Police Department.

We dismiss Ms. Coleman's claims against the Office of Public Safety and the Wilmington Police Department with prejudice. Our Court of Appeals does not permit civil rights suits against police departments and other administrative arms of a municipality like the Office of Public Safety.[30] The issues are whether Ms. Coleman can proceed on her pleaded civil rights claims against the City.

### B. We dismiss Ms. Coleman's section 1981 claim.

Ms. Coleman claims the City violated section 1981 based on her allegations the Wilmington Police Department under Inspector Ashe discriminated against Black police

4

officers.[31] Ms. Coleman alleges the Wilmington Police Department favored white police officers over Black police officers for promotions.[32] Ms. Coleman alleges the Police Department disciplined white police officers more leniently than Black police officers.[33] The City moves to dismiss this section 1981 claim.[34] The City counters Ms. Coleman inappropriately sues state actors under section 1981.[35] Congress, through section 1981, only allows suits against private actors.[36]

Congress, through section 1981, prohibits private actors from engaging in racial discrimination.[37] Congress did not create a private cause of action under section 1981 against state actors.[38] Our Court of Appeals considers section 1983 as the "exclusive federal remedy for violation of the rights guaranteed in [section] 1981 by state governmental units."[39] Ms. Coleman cannot sue the City and its agencies under section 1981. We dismiss the section 1981 claims against state actors with prejudice. We dismiss Ms. Coleman's racial discrimination claims under section 1981 without prejudice as she did not sue a private actor but she may be able to plead racial discrimination claims under section 1983.

**C.  We dismiss Ms. Coleman's section 1983 claim against the City.**

Ms. Coleman seeks damages from the City under section 1983 alleging the City had a racial motivation for issuing the search warrant for her cell phone seeking information about the 2008 murder.[40] Ms. Coleman alleges this motivation stems from the City's "long-standing racial problems" investigating its own police officers.[41] Ms. Coleman alleges the City has a practice allowing forensic examiners to download the entire contents of a cell phone subject to a search warrant irrespective of the warrant's date range.[42] The City moves for summary judgment on this section 1983 claim.[43] The City counters Ms. Coleman did not suffer a Fourth Amendment harm arising from the scope of the search warrant because Judge LeGrow validly issued the search

warrant and Ms. Coleman pleads nor offers no basis to challenge Judge LeGrow's findings.[44] We agree with the City as to Ms. Coleman's failure to plead facts allowing us to disregard Judge LeGrow's decision to allow the City to obtain cell phone information through a warrant.

Valid search warrants must be "1) be based on probable cause; 2) be supported by a sworn affidavit; 3) describe particularly the place of the search; and 4) describe particularly the persons or things to be seized."[45] As our Supreme Court taught years ago in *Franks v. Delaware,* a person subject to the warrant later challenging a warrant affidavit's truth must allege "(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause."[46]

We dismiss Ms. Coleman's Fourth Amendment claims because she fails to plead deficiencies in the search warrant or process of obtaining it.[47] She instead alleges the motivations underlying the warrant and the City's long-standing racial disparities in investigating officers. She does not offer and we cannot separately find authority for allowing a civil rights challenge to the scope of a search warrant under the Fourth Amendment based on alleged race animus when the person subject to the search cannot meet the *Franks* standards.

We dismiss Ms. Coleman's Fourth and Fourteenth Amendment claims because she does not plead the warrant's invalidity. We deny summary judgment as Ms. Coleman may be able to allege a section 1983 claim.[48] But Ms. Coleman could possibly plead a section 1983 claim if she can adduce facts to allow her attorney to sign a pleading asserting a section 1983 legal claim. We grant Ms. Coleman leave to timely amend including to plead a section 1983 claim.

### III.    Conclusion

We dismiss the section 1981 claim and civil rights claims against the Office of Public Safety and Police Department with prejudice. We dismiss Ms. Coleman's section 1983 claims

without prejudice to Ms. Coleman timely amending her allegations if she can do so consistent with Rule 11. We deny the motion for summary judgment without prejudice to renewal based on pleaded facts.

---

[1] D.I. No. 1 ¶ 7.

[2] *Id.* ¶ 8.

[3] *Id.*

[4] *Id.* ¶ 9.

[5] *Id.*

[6] *Id.*

[7] *Id.* ¶ 10-12.

[8] *Id.* ¶ 12.

[9] *Id.* ¶ 15.

[10] *Id.* ¶ 16.

[11] *Id.* ¶ 15.

[12] *Id.* ¶ 17.

[13] *Id*. Ms. Coleman alleges the City does not impose these restrictions on white police officers on Administrative Duty. *Id.*

[14] *Id.* ¶ 19.

[15] *Id.* ¶ 7.

[16] *Id.* ¶¶ 58-61.

[17] *Id.* ¶¶ 62-65.

[18] *Id.* ¶ 20.

[19] *Id.*

---

[20] *Id.* ¶ 43.

[21] *Id.* ¶ 25.

[22] *Id.* ¶ 26.

[23] *Id.* ¶ 45. Ms. Coleman alleges Inspector Ashe convinced the Wilmington police chief to give her control of "[ninety percent]" of the Wilmington police department during Ms. Coleman's tenure. *Id.*

[24] *Id.* ¶ 45. *See also id.* ¶ 51 ("Defendant does not have effective racial harassment or nondiscrimination policies and procedures.").

[25] *Id.* ¶¶ 45, 47.

[26] *Id.* ¶¶ 45d, 45e, 47b, 47d, 47g, 47i, 47l.

[27] *Id.* ¶ 55.

[28] D.I. No. 13 at 9-10; Ms. Coleman did not sue an individual state actor as a "person" under the civil rights laws. She instead chose to sue the City and its administrative departments.

[29] *Id.* at 11-17.

[30] *Padilla v. Twp. of Cherry Hill*, 110 Fed. App'x 272, 278 (3d Cir. 2004) ("[P]olice departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity.").

[31] D.I. No. 1 ¶ 45.

[32] *Id.* ¶¶ 45, 47.

[33] *Id.* ¶ 17.

[34] A party seeking relief through a complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he

plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id*. (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[35] D.I. No. 13 at 23.

[36] *Id.*

[37] 42 U.S.C. § 1981(c).

[38] *McGovern v. City of Philadelphia*, 554 F.3d 114, 120-21 (3d Cir. 2009).

[39] *Id.* at 121 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)).

[40] D.I. No. 1 ¶ 25.

[41] *Id.* ¶ 26.

[42] *Id.* ¶ 20.

[43] D.I. No. 12.  Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in

favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex*, 477 U.S. at 322–23).

[44] D.I. No. 13 at 11-12.

[45] *United States v. Baker*, 563 F. Supp. 3d 361, 372 (M.D. Pa. 2021) (citing *Groh v. Ramirez*, 540 U.S. 551, 557 (2004)).

[46] *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)).

[47] *See* D.I. No. 1.

[48] Ms. Coleman does not plead a civil rights racial discrimination in employment claim under section 1983. She instead requests we allow her to argue the racial discrimination under section 1983 in her response brief. D.I. No. 17 at 15-16. We cannot amend pleadings through a response brief. *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007)).

But Ms. Coleman may be able to plead a racial discrimination claim in employment against the City under a municipal liability theory under section 1983. *Hills v. Borough of Colwyn*, 978 F. Supp. 2d 469, 474 (E.D. Pa. 2013). She must plead the City as her employer engaged in a policy or custom of racial discrimination against Black police officers causing her harm. *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009).

Ms. Coleman does not presently allege the City engaged in a policy or custom of racial discrimination because she does not plead non-party Inspector Ashe is a policymaker. The Supreme Court's teachings in *Monell v. Department of Social Services of City of New York* guide our analysis of section 1983 claims against municipal entities. 436 U.S. 658, 691 (1978). Municipal entities are not liable for employee violations of section 1983. *Id.* Ms. Coleman must instead allege a municipal entity's "policy or custom" caused the harmful constitutional violation. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). Municipal

entities are liable for the actions of governmental employees who possess "final, unreviewable discretion" can create and implement the "policies" to which *Monell* liability attaches. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 264-65 (3d Cir. 2010). Statutes and employee handbooks often instruct whether police department employees can serve as policymakers for *Monell* purposes and bind municipal entities. *Hernandez v. Borough of Palisades Park Police Dep't*, 58 Fed. App'x 909, 913 (3d Cir. 2003) (holding New Jersey statutes and policy handbooks dictated the Chief of Police is the policymaker for New Jersey police departments); *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010) (holding Pennsylvania statute dictates township supervisors are *Monell* policymakers for decisions made by township police departments).

Our Court of Appeals instructs us in *Hill v. Borough of Kutztown* to carefully analyze *Monell* discrimination claims stemming from the highest-ranking employee's actions. 455 F.3d 225 (3d Cir. 2006). The engineer in *Hill* worked for the Borough of Kutztown reporting to the Kutztown City Council and its Mayor. *Id.* at 230. The Mayor of Kutztown publicly harassed the engineer for six months leading to the engineer's resignation. *Id.* at 230-32. Kutztown replaced the engineer with a younger employee. *Id.* at 232. The engineer sued Kutztown for age discrimination and alleged the Mayor operated as the final policymaker implementing Kutztown's age discrimination policy. *Id.* at 232, 246. Our Court of Appeals held the Mayor operated as a policymaker under *Monell* because no other Kutztown employee "had the power to curtail his conduct or prevent him" from harassing the engineer. *Id.* at 246.

We are guided by Judge Surrick's analysis denying dismissal of *Monell* claims implicating borough mayors as "policymakers" responsible for firing a police clerk. *Bilal v. Borough*, No. 14-5438, 2017 WL 3675382 (E.D. Pa. Aug. 25, 2017). The police clerk in *Bilal* prepared disciplinary paperwork for two Colwyn Borough police officers. *Id.* at *1. The two police officers allegedly colluded with the Colwyn Borough mayors to arrest the police clerk and prevent the disciplinary hearing. *Id.* The police department fired the police clerk without explanation six months after her arrest. *Id.* The police clerk sued the Borough arguing the mayors operated as *Monell* policymakers because their involvement in her firing dictated the police department's decision to fire her. *Id.* at *10. Judge Surrick noted courts reviewing policymaker claims "must look to state and local laws." *Id.* Judge Surrick found Pennsylvania state law generally vests mayors with the "full charge and control of the chief of police and the police force" and held the police clerk adequately pleaded *Monell* claims against the Borough. *Id.*

We are also guided by Chief Judge Sanchez's analysis in dismissing race discrimination employment claims against a municipal entity where the plaintiff failed to allege a *Monell* "policymaker" influenced his firing. *Thompson v. Se. Pa. Transp. Auth.*, No. 20-756, 2021 WL 2414610 (E.D. Pa. June 14, 2021), *aff'd*, No. 21-2286, 2022 WL 17958629 (3d Cir. Dec. 27, 2022). The SEPTA driver in *Thompson* hit a pedestrian during his route. *Id.* at *1. SEPTA fired the driver and engaged in a three-level review process involving three different SEPTA employees reviewing the firing's merits. *Id.* at *1-2. SEPTA upheld the decision and the driver sued alleging racial discrimination because SEPTA allegedly did not fire white bus operators involved in similar accidents. *Id.* at *2. The driver sued SEPTA alleging one employee involved in the three-level review process operated as a policymaker furthering SEPTA's policy of racial

discrimination against Black drivers. *Id.* at *4. Chief Judge Sanchez dismissed the complaint, finding the driver failed to plead the SEPTA employee wielded "final unreviewable authority" despite being present at each hearing on the driver's firing. *Id.*

Ms. Coleman pleads less specifics about Inspector Ashe's role in Ms. Coleman's firing and within the City's police department than Judge Surrick and Chief Judge Sanchez considered in *Bilal* and *Thompson*. Ms. Coleman argues the City's police department has a pattern and practice of racial discrimination against Black officers. D.I. No. 1 ¶ 55. Unlike the driver in *Thompson,* Ms. Coleman does not allege Inspector Ashe created or implemented a policy of racial discrimination. Ms. Coleman does not allege the circumstances of Ms. Coleman's firing, and Inspector Ashe's role in Ms. Coleman's firing. We have less information about the City's policy of racial discrimination against Black officers and Inspector Ashe's role in it than did Chief Judge Sanchez when he dismissed a *Monell* claim concerning racial discrimination at SEPTA. Ms. Coleman fails to plead Inspector Ashe has ultimate authority in personnel and disciplinary decisions at the City's police department. We are unable to determine whether Inspector Ashe wields similarly unchecked authority as the Mayor of Kutztown in *Hill* to implement discriminatory policies. Ms. Coleman also fails to direct us to a Delaware statute dictating which Wilmington employee controls the police department. Inspector Ashe is not the City's police chief. Ms. Coleman needs to plead more facts to assess her *Monell* claim. We dismiss Ms. Coleman's racial discrimination claim but grant her leave to amend consistent with the Federal Rules.